IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOANNE ERMANDINE PENNY, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>PNC BANK, N.A., et al.<br><br>　　　　　　Defendants.<br>_____ | Civ. No. 19-00006 JMS-KJM<br><br>JOINT ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ORDER OF REMAND |
| MICHAEL K. NAKATSU, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>PNC BANK, N.A., et al.,<br><br>　　　　　　Defendants. | Civ. No. 19-00047 JMS-KJM<br><br>JOINT ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ORDER OF REMAND |

**JOINT ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTIONS FOR ORDER OF REMAND**

**I. INTRODUCTION**

　　　　The court faces nearly identical motions to remand these two cases, which were removed from the First Circuit Court of the State of Hawaii ("state

1

court") by Defendant PNC Bank, N.A. ("PNC Bank").[1] The same counsel represent the primary parties in both cases, the motions were argued together, and the motions involve similar facts with the same issues of law. Thus, although the cases are not consolidated, the court issues this joint order to be filed in each case.

The court heard Plaintiffs' Motions for Order of Remand on May 14, 2019. As explained to follow, the Motions are GRANTED in part, and the cases are REMANDED to the state court for lack of subject-matter jurisdiction. The court, however, DENIES Plaintiffs' requests for awards of attorneys' fees and costs.

## II. BACKGROUND

The Complaints in these cases are both based on allegations of wrongful foreclosure, asserting claims against PNC Bank and others for (1) wrongful deprivation of real property, (2) unfair and deceptive trade practices, and (3) quiet title. Plaintiffs allege that PNC Bank and its agents improperly conducted non-judicial foreclosures on mortgages that were in default, in violation of Hawaii law and "power of sale" clauses in the mortgages. The precise details of the alleged wrongful conduct are not germane for the present motions to remand,

---

[1] The Motions are (1) Motion for Order of Remand, *Penny, et al. v. PNC Bank, N.A., et al.,* Civ. No. 19-00006 JMS-KJM (D. Haw. Feb. 6, 2019) ("*Penny*") (ECF No. 21); and (2) Motion for Order of Remand, *Nakatsu, et al. v. PNC Bank, N.A.*, *et al.*, Civ. No. 19-00047 JMS-KJM (D. Haw. Feb. 14, 2019) ("*Nakatsu*") (ECF No. 6).

2

which concern questions of law regarding subject-matter jurisdiction. The court thus focuses on the specific background relevant to the jurisdictional issues.

What's important for present purposes is that the foreclosures at issue were completed against properties as far back as 2009, after Plaintiffs defaulted on their mortgages, and the properties were subsequently purchased by buyers who encumbered the properties with mortgages held by current mortgagees (e.g., *Nakatsu* co-Defendants Territorial Savings Bank and First Hawaiian Bank). The Complaints name these current homeowners and mortgagees as Defendants for the quiet title counts, thus seeking (in addition to other remedies against PNC Bank) an award of title and ejectment of the current homeowners as possible relief for the allegedly wrongful foreclosures.

For example, in *Nakatsu*, Plaintiffs allege as to the current owners, Defendants Russell and Deanna Oda:

> 81. Prior to accepting and recording the deed from HSBC Bank USA . . . Defendants Oda had constructive notice of the publicly recorded documents in their chain of title . . . and, further, had constructive notice if not actual notice that HSBC Bank USA . . . had acquired its putative title from PNC, PNC having purported to purchase the Property at ***its own*** foreclosure sale. They knew or reasonably should have known that there was a break in the chain of title since the last owner of record before PNC were the . . . Plaintiffs but there was no deed from the . . . Plaintiffs to PNC and their deed was from HSBC Bank USA . . . who had acquired the [Plaintiffs'] Property from PNC, meaning that they (Defendants Oda)

3

knew their chain of title was only valid if the foreclosure was valid.

ECF No. 1-2 (*Nakatsu*) at PageID #40. The *Nakatsu* Complaint continues:

> 84. Because PNC failed to strictly comply with HRS §§ 667-5 *et seq.* (2008) and the power of sale in the Mortgage as set forth above, the non judicial foreclosure sale and transfer of the [Plaintiffs'] Property to HSBC Bank USA, . . . was void as a matter of law, or at least voidable, and hence all subsequent transfers were likewise void or at least voidable as to non-bona fide purchasers. Accordingly, Plaintiffs . . . are entitled to have the Property returned to them by Defendants Oda, and to have any claim of title or interest by the Defendants Oda, extinguished.
>
> 85. The [Plaintiffs'] interest in the Property is superior to that of Defendants Oda (and their assignees or mortgagees, if any) because all subsequent transfers after HSBC Bank USA['s] . . . void, or at least voidable, deed to itself are also void or at least voidable.

*Id.* at PageID #41. Similarly, as to the current mortgagees, it alleges:

> 91. For the same reasons as alleged against the Oda Defendants, Defendant Territorial Savings Bank, FSB and Defendant First Hawaiian Bank are not bona fide mortgagees for value because they were aware (or reasonably should have been aware) that they were accepting a mortgage on property that had been acquired by a bank at its own foreclosure sale and were on constructive notice of (or on inquiry notice to examine) the Foreclosure Affidavit which would have revealed the violations of the power of sale and the statute alleged above.

*Id.* at PageID #42.

Both Complaints were filed in state court in December 2018 against PNC Bank and the current owners and mortgagees.[2] In January 2019, PNC Bank removed them to this court under 28 U.S.C. § 1441 based upon diversity of citizenship. On one side, the various Plaintiffs in both cases are citizens of Hawaii (or of California or Colorado), and, on the other side, PNC Bank is alleged to have a principal place of business in Pittsburgh, Pennsylvania, *see* ECF No. 1-2 at PageID #20 (*Nakatsu*).[3] The current owners and some of the mortgagees, however, are alleged to be citizens of Hawaii—the same citizenship as most of the Plaintiffs—thus destroying complete diversity of citizenship. *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining that complete diversity of citizenship is required under 28 U.S.C. § 1332(a), which "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant"). PNC Bank, however, removed the cases on a theory of "fraudulent joinder," asking the court to disregard the citizenship of the non-diverse defendants

---

[2] *Penny* was filed on December 7, 2018, *see* ECF No. 1-2 (Civ. No. 19-00006 JMS-KJM); and *Nakatsu* was filed on December 20, 2018, *see* ECF No. 1-2 (Civ. No. 19-00047 JMS-KJM).

[3] PNC Bank claims to be a citizen of Delaware. *See* ECF No. 1 at PageID #5 (Civ. No. 19-00047 JMS-KJM). The court need not resolve whether PNC Bank is a citizen of Pennsylvania or Delaware because the question for present purposes is whether there otherwise is complete diversity of citizenship between each Plaintiff and each Defendant in either suit, and whether to include the citizenship of the current owners and mortgagees in making that assessment.

because, they argue, Plaintiffs "fail[] to state a cause of action against a resident defendant, and the failure is obvious according to settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

Plaintiffs filed their Motions for Order of Remand in February 2019, seeking to remand the cases back to state court, arguing that the non-diverse defendants were *not* "fraudulently joined" and that the court lacks subject-matter jurisdiction because complete diversity of citizenship does not exist. The ultimate question therefore is whether to disregard the non-diverse defendants—if so, then the cases remain in federal court, but if not, the court must remand the cases to state court for lack of subject-matter jurisdiction.

### III. **DISCUSSION**

**A.   Fraudulent Joinder Standards**

"[T]here are 'two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (some quotation marks omitted)).[4]  "[T]he term 'fraudulent joinder' is somewhat of a 'misnomer,'"

---

[4]  The first possibility (actual fraud) is not at issue; the focus is on the second.

*Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (citation omitted). It "is established . . . if a defendant shows that an 'individual joined in the action cannot be liable on any theory." *Grancare, LLC v. Thrower By & Through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)) (brackets omitted). "But 'if there is a *possibility* that a state court would find that the complaint states a case of action against any of the [non-diverse] defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *Id.* (quoting *Hunter*, 582 F.3d at 1046).

The failure to state a cause of action against a non-diverse defendant must be "obvious according to the settled rules of the state." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339). And fraudulent joinder "does not require an ill motive." *Lovell v. Bad Ass Coffee Co. of Haw., Inc.*, 103 F. Supp. 2d 1233, 1237 (D. Haw. 2000) (citing *McCabe*, 811 F.2d at 1339); *Albi v. St. & Smith Publ'ns, Inc.*, 140 F.2d 310, 312 (9th Cir. 1944) ("[I]t is universally thought that the motive for joining such a defendant is immaterial.").

There is a "'strong presumption against removal jurisdiction mean[ing] that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court."

7

*Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).  Additionally, "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against finding fraudulent joinder.'"  *Grancare LLC*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046) (square brackets omitted).  And "[f]raudulent joinder must be proven by clear and convincing evidence."  *Hamilton Materials Inc.*, 494 F.3d at 1206 (citation omitted).

Although "the fraudulent joinder standard shares some similarities with the analysis under [Federal Rule of Civil Procedure] 12(b)(6)," the tests "are not equivalent."  *Grancare LLC*, 889 F.3d at 549.  "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."  *Id.*

> A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.  Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction.

*Id.* (citation omitted).  "The relative stringency of the standard accords with the presumption against removal jurisdiction, under which [courts] 'strictly construe

8

the removal statute,' and reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *Id.* at 550 (quoting *Gaus*, 980 F.2d at 566).

## B. The Non-Diverse Defendants Were Not Fraudulently Joined

Applying those standards and after reviewing the arguments of counsel, the court concludes that PNC Bank has not met its heavy burden to demonstrate fraudulent joinder.

Assuming for present purposes that PNC Bank wrongfully foreclosed on Plaintiffs' prior mortgages, Plaintiffs argue that—aside from damages against PNC Bank—they are allowed to seek "the classic remedy for [wrongful foreclosure]: return of title and possession." *Santiago v. Tanaka*, 137 Haw. 137, 154 n.33, 366 P.3d 612, 629 n.33 (2016). This cause of action for quiet title would require naming current titleholders as defendants. Their theory of quiet title against current owners and mortgagees (the non-diverse Defendants) as explained in their Motions (and as understood to be by the court) essentially has five steps:[5]

(1) the wrongful foreclosure renders subsequent transfers of the property "void" (or at least "voidable");

(2) if the transfers are truly "void," then they cannot pass good title (and current mortgagees have invalid mortgages); or

---

[5] *See, e.g.*, Pls.' Mem. in Support of Mtn. to Remand, ECF No. 21-1 (*Penny*) at PageID #333 to 337 and ECF No. 6-1 (*Nakatsu*) at PageID #332 to 336.

(3) if the transfers are only "voidable," a prior owner who suffered the wrongful foreclosure would still have superior title, unless a subsequent buyer could prove that it was an innocent or "bona fide purchaser;" where

(4) a "bona fide purchaser" is "one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller," *Bank of N.Y. Mellon v. R. Onaga, Inc.*, 140 Haw. 358, 367 n.13, 400 P.3d 559, 568 n.13 (2017) (quoting *Ka'u Agribusiness Co. v. Heirs or Assigns of Ahulau*, 105 Haw. 182, 193, 95 P.3d 613, 624 (2004));[6] and where

(5) the current owners are not bona fide purchasers because they had "knowledge" of the alleged defects in the title—either through "constructive notice" ("record notice" or "inquiry notice"), or actual notice.

Plaintiffs contend such a cause of action is entirely possible (especially in state court), and they cite several instances where state trial courts, as recently as January 3, 2018, have allowed such complaints to continue past a motion-to-dismiss or summary-judgment stage. *See Nakatsu* Pls.' Exs. 3 to 5, ECF

---

[6] *See also Kondaur Cap. Corp. v. Matsuyoshi*, 136 Haw. 227, 240 n.27, 361 P.3d 454, 467 n.27 (2015) ("A non-bona fide purchaser is one who does not pay adequate consideration, takes with knowledge that his transferor acquired title by fraud, or buys registered land with full notice of the fact that it is in litigation between the transferor and a third party.") (citations and internal editorial marks omitted).

10

Nos. 6-5 to 6-7 (Civ. No. 19-00047 JMS-KJM). Indeed, they cite a state case from 2018—alleging the same essential theory—that granted a *plaintiff*'s motion for summary judgment, striking an affirmative defense that asserted the subsequent purchasers were bona fide purchasers. *See id.* Ex. 2, ECF No. 6-4 (Finding of Fact, Conclusions of Law & Order, *Jebo v. Sengsavath*, No. 16-1-0321K (Haw. 3rd Cir. Ct. Jan. 9, 2018)). The also cite a similar federal case from this district that survived a motion to dismiss. *See Lynch v. Bank of N.Y. Mellon*, 2018 WL 3624969, at *7 (D. Haw. July 30, 2018) ("[A]t the motion to dismiss stage, when this Court must assume Plaintiffs' factual allegations to be true, Plaintiffs have pled—albeit just barely—sufficient factual allegations [(including purchasing the property at a discounted price)] to support a plausible quiet title claim against the [current owners].").

In response, PNC Bank makes a compelling case for dismissal of the non-diverse defendants. It argues that recent Hawaii law has held that a wrongful foreclosure renders a subsequent transaction "voidable" (not "void"). *See Mount v. Apao*, 139 Haw. 167, 179-80, 384 P.3d 1268, 1281-82 (2016) ("[W]here it is determined that the nonjudicial foreclosure of a property is wrongful, the sale of the property is invalid and voidable at the election of the mortgagor, who shall then regain title to and possession of the property.") (quoting *Santiago*, 137 Haw. at 158, 366 P.3d at 633). It argues that *Mount* clarified that "where the property has

11

passed into the hands of an innocent purchaser for value, rendering the voiding of a foreclosure sale impracticable, an action at law for damages is generally the appropriate remedy." *Id.* at 180, 384 P.3d at 1281 (citing *Santiago*, 137 Haw. at 158, 366 P.3d at 633).[7] And it points out that several decisions from this district, applying Hawaii law, have dismissed quiet title claims on these grounds against current owners for failure to state a claim (rejecting, for example, Plaintiffs' theory that constructive notice is sufficient to negate innocent purchaser status). *See Tilley v. Bank of N.Y. Mellon*, 2018 WL 1415171, at *14 (D. Haw. Mar. 21, 2018) (Gillmor, J.); *Seegers v. CIT Bank N.A.*, 2018 WL 1558550, at *6 (D. Haw. Feb. 28, 2018) (Kobayashi, J.) ("A quiet title action cannot be maintained unless the plaintiff plausibly alleges that the property's current owners are non-bona fide purchasers."); *Lynch v. Bank of N.Y. Mellon*, 2017 WL 3568667, at *4-5 (D. Haw. Aug. 15, 2017) (Kobayashi, J.) (dismissing quiet title claim that contained "the most generalized allegation that the [buyers] had knowledge that the foreclosure was unlawful because of [the bank's] recordation of the Notice of Sale and fails to include any factual content from which any reasonable inference could be drawn

---

[7] PNC Bank also argues that Plaintiffs' quiet title claims are barred by a six-year statute of limitations. Plaintiffs, however, point out that some Hawaii courts have applied a twenty-year limitation period for similar claims. *See* Pls.' Exs. 3 & 4, ECF Nos. 6-5 & 6-6; *see also Bowler v. Christiana Tr.*, 143 Haw. 235, 426 P.3d 459 (Haw. Ct. App. 2018) (unpublished memorandum decision) (holding that the 20-year limitation period in Haw. Rev. Stat. § 657-31 applies to foreclosure action).

that the [buyers] colluded with [the bank], knew of wrongdoing by [the bank], or were not bona fide purchasers"). It also argues that the state trial court decisions cited by Plaintiffs were wrongly decided.

The court might very well agree with PNC Bank (and other district court cases) and conclude that Plaintiffs' complaints fail to state *plausible* quiet title claims against the current owners. It makes complete sense that Plaintiffs, even if they could prove wrongful foreclosure, should not be entitled to eject a subsequent innocent purchaser for value and obtain title (especially where it appears undisputed that Plaintiffs had already defaulted on the prior mortgage contracts, and where the theories of wrongful foreclosure are based on case law that did not exist at the time—*Santiago*, for example, was decided in 2016, followed shortly by *Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 391 P.3d 1 (2017)). In such circumstances, Plaintiffs' remedy ought to be limited to damages against the wrongful party.

But the court is not deciding whether the *Penny* and *Nakatsu* Complaints fail to state claims—that is not the standard. The court is not determining whether either of these particular Complaints sufficiently allege facts that could state *plausible* quiet title claims against these particular resident Defendants. Rather, the court is only determining whether the non-resident defendants were "fraudulently joined." To determine that, the question is whether

a quiet title claim is *possible* or whether a claim must necessarily fail under the *settled* law of Hawaii. *See, e.g.*, *Hunter*, 582 F.3d at 1046. Furthermore, the court decides the fraudulent joinder question without considering the possible motives Plaintiffs might have had to name the non-diverse Defendants. *See, e.g.*, *Lovell*, 103 F. Supp. 2d at 1237.

Applying the fraudulent joinder standard, the court agrees with Plaintiffs that it is *possible* that they could state claims that, if proven, might entitle them to quiet title against current title-holders. Even if this court might agree with arguments to dismiss such a claim—e.g., wrongful foreclosure only renders subsequent transfers voidable, constructive notice is insufficient to negate bona fide purchaser status, or claims are time-barred—the arguments are in large part based on "unsettled" state law.

Plaintiffs argue, for example, that certain types of wrongful foreclosures render subsequent transfers truly void (and not merely voidable), citing *Silva v. Lopez*, 5 Haw. 262, 271 (1884) and non-Hawaii case law. Plaintiffs also argue that constructive notice could be sufficient to negate bona-fide purchaser status under its reading of Hawaii law (even if judges in this district might reject that theory). And, as noted earlier, whether a six or twenty-year statute of limitations applies is not clear. Even if this court would reject Plaintiffs' arguments based on its own interpretation of Hawaii law, that decision would not

be based on "settled" Hawaii law. *See, e.g.*, *In re Ho*, 2017 W.L. 1323406, at *2 (Bankr. D. Haw. Apr. 7, 2017) (denying reconsideration of an order that concluded that a defective nonjudicial foreclosure is voidable, not void, but indicating that the question is sufficiently uncertain that it should be certified to the Hawaii Supreme Court) (Faris, J.).

Similarly, it is not enough that this court might disagree with the state trial courts that have allowed similar claims to proceed. It is not enough that this court might find Plaintiffs' theory *implausible* for a lack of specific facts. The test is whether it is possible for claims to survive a dismissal motion in *state* court (where an *Iqbal/Twombly* plausibility standard does not apply). *See Grancare*, 889 F.3d at 549; *see also Bank of Am., N.A. v. Reyes-Toledo*, 143 Haw. 249, 252, 428 P.3d 761, 764 (2018) ("[T]his court has never adopted the *Twombly/Iqbal* 'plausibility' pleading standard, and we now expressly reject it. We reaffirm that in Hawaiʻi state courts, the traditional 'notice' pleading standard governs.").[8]

In sum, given the "general presumption against finding fraudulent joinder," *Grancare LLC*, 889 F.3d at 548, and the "strong presumption against

---

[8] Because the court rejects PNC Bank's fraudulent joinder arguments, the court need not reach whether a "common defense" theory of fraudulent joinder might also apply. *See Hunter*, 582 F.3d at 1044-45 (explaining that if the reason the plaintiff cannot prevail in state court against a non-diverse defendant "necessarily compels the same result for [a] nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit," such that "the allegation of improper joinder is actually an attack on the merits," meaning that fraudulent joinder is inapplicable) (quoting *Smallwood*, 385 F.3d at 574).

15

removal jurisdiction," *Hunter*, 582 F.3d at 1042, the court concludes that PNC Bank has not met its burden to demonstrate fraudulent joinder.

## C.     The Court Declines to Award Plaintiffs Attorneys' Fees and Costs

Plaintiffs also seeks attorneys' fees and costs for PNC Bank's removal. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" *Grancare, LLC*, 889 F.3d at 552 (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).

Applying those standards, the court declines to award Plaintiffs fees or costs. Given the strength of PNC Bank's arguments for dismissing the non-diverse defendants, and the several cases from this district that have granted such motions, PNC Bank had an objectively reasonable basis for removing these cases. That is, PNC Bank had a basis on which to at least argue that Plaintiffs could not

16

state a cause of action against the non-diverse Defendants, and such a failure was obvious under settled law. Although the court disagrees with PNC Bank in this regard, its removal of these cases does not warrant an award of attorneys' fees or costs to Plaintiffs.

## IV. <u>CONCLUSION</u>

The court GRANTS Plaintiffs' Motion for Order of Remand in both *Penny v. PNC Bank*, Civ. No. 19-00006 JMS-KJM and *Nakatsu v. PNC Bank*, Civ. No. 19-00047 JMS-KJM, but DENIES Plaintiffs' requests for an award of attorneys' fees and costs. The non-diverse Defendants in both cases were not fraudulently joined. The court lacks subject-matter jurisdiction. The cases are REMANDED forthwith to the First Circuit Court for the State of Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 23, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Penny v. PNC Bank, N.A.*, Civ. No. 19-00006 JMS-KJM; *Nakatsu v. PNC Bank, N.A.*, Civ. No. 19-00047 JMS-KJM, Joint Order Granting in Part and Denying in Part Plaintiffs' Motions for Order of Remand